Filed 6/12/14  Wells v. Grocery Outlet CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>DONNA K. WELLS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>GROCERY OUTLET, INC.,<br><br>      Defendant and Respondent.</td><td>A137555<br><br>(Alameda County<br>Super. Ct. No. HG11583845)</td></tr>
</table>

Donna K. Wells (Wells) appeals from a summary judgment entered after the trial court determined there was no triable issue of material fact as to her personal injury claims against Grocery Outlet, Inc. (Grocery Outlet).  She contends the trial court erred by:  (1) failing to give proper weight to her expert; (2) "conclud[ing] that . . . [Grocery Outlet's] declarations . . . negated [her] claims"; (3) failing to rule on the parties' evidentiary objections; (4) stating she had failed to file a separate statement of undisputed facts when she, in fact, had prepared and filed one; (5) failing to rule on the issue of res ipsa loquitur; and (6) denying her request for a stay of the proceedings.  We reject the contentions and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Wells was grocery shopping at the Grocery Outlet in Oakland on July 5, 2009, when she reached for a can of ravioli on a display and 10 to 12 other cans fell on her, striking her arm, knee, upper thigh, and foot.  An employee who came to her aid and a "manager, who helped, admitted that the cans were not stacked properly."  The manager

1

offered to call an ambulance but Wells declined the offer. The manager gave Wells a cane because she "could not put weight on [her] foot."

Based on her husband's suggestion, Wells went to see a doctor, who took an x-ray and informed her that she had arthritis in her knee. He referred her to a knee specialist, who informed her that she would need knee replacement surgery. Wells filed a personal injury complaint against Grocery Outlet alleging causes of action for general negligence and premises liability. She alleged that Grocery Outlet "failed to maintain the grocery store in a reasonably safe condition and allowed [her] to be injured on the premises." She further alleged that Grocery Outlet "failed to properly store canned goods and they fell on [her] causing her to injure herself."

Grocery Outlet filed a motion for summary judgment. In support of its motion, Grocery Outlet presented a declaration from Bennie Tiapon, who was the store manager of the Oakland store at the time of the filing of the motion. Tiapon declared, among other things: "It is Grocery Outlet's practice to display canned goods in its store by stacking the cans with a cardboard layer with raised edges separating each layer of cans from the layer above and below"; "Separating the layers with cardboard is done for safety purposes and mitigates the risk of cans falling out and the display collapsing if cans are removed from the lower tiers of the display"; "In addition to displaying canned goods with the layers separated by cardboard with raised edges, at all times during business hours, a designated Grocery Outlet employee, nicknamed a 'trasher,' rotates throughout the store to ensure that the canned good displays are stacked correctly and remain in a safe condition"; "The 'trasher' typically views each area of the store approximately once per hour"; "In addition to the 'trasher,' store personnel are assigned to each region of the store to monitor display conditions for both presentation and safety"; "There have been no prior reported instances of 'cans falling on customers' at this location"; and "If the cans in question were stacked 'incorrectly' at the time of the incident as plaintiff alleges, Grocery Outlet had no knowledge of this condition."

Robert Grossman, the former store manager who was on duty at the time of the incident, confirmed the practice and purpose of stacking cans with the cardboard layer.

2

He further declared, "I am aware of no prior instances of 'cans falling on customers' at this location"; and "I had no knowledge that the cans were stacked 'incorrectly' at the time of the incident as plaintiff alleges."

Wells opposed the motion with her own declaration in which she set forth the facts relating to her injury, and with the declaration of expert witness Albert Ferrari, PE. Ferrari declared that he went to Grocery Outlet's Oakland store and "observed . . . lots of canned goods stacked to and above adult head height at the subject store. I observed such stacks wherein cans had been removed below the top level, which reduced the stability of the cans above the missing cans below. It is plausible and foreseeable that a short person would remove cans at a lower level which would be easier to reach." He further declared that "the typical configuration of stacked canned goods . . . [at the Grocery Outlet] is to stack layers of containers separated by partial cardboard boxes whose sides have been trimmed to a few inches above the bottom cardboard layer. In many cases, the front side was completely trimmed away allowing easy removal of cans from lower levels. Even where the front edge remains and extends a few inches above the bottom, cans can be pulled over the front edge and removed." He opined that the way in which the cans were stacked created a "risk that several cans above a lower partially empty layer may topple over and strike a shopper," and that the "partial cardboard boxes interlaced with the cans lack sufficient strength and stiffness to preclude the toppling hazard." He declared that the "more common stocking method in grocery stores is to stack canned goods, etc. on shelves without the use of trimmed cardboard boxes."

Wells filed objections to the two Grocery Outlet declarations. Grocery Outlet's reply papers included evidentiary objections to the Wells and Ferrari declarations. After a hearing on the motion, the trial court took the matter under submission, then granted summary judgment. The court ruled: "Plaintiff's evidence in opposition to the motion is insufficient to raise a triable issue of fact that Grocery Outlet created a dangerous condition, or that Grocery Outlet had notice of a dangerous condition in sufficient time to remedy it. [¶] Assuming that the statements by unidentified store personnel constitute admissions, they are not evidence of a dangerous condition that was created by the store

3

or its employees. Although there are circumstances in which an employee's admissions can establish the existence of a dangerous condition or notice to the employer [citations], here there is no evidence to establish that the allegedly unsafe condition of the stacked cans was created by defendant's employees, or that defendants had notice of the condition before plaintiffs accident occurred."

The court ruled as to Ferrari's declaration: "Statements in the Ferrari Declaration that the 'typical configuration' of stacked canned goods at Grocery Outlet created a risk of harm are also insufficient to raise a triable issue of fact that the store itself created a dangerous condition, where there is nothing to support that the circumstances described in Mr. Ferrari's declaration existed or occurred on the date of the plaintiff's accident, and with respect to the display at issue. Expert opinion resting on speculation and surmise is not adequate to survive summary judgment because it fails to establish a reasonably probable causal connection between the defendant's negligence and the plaintiff's injury. [Citation.] Mr. Ferrari has no personal knowledge of the manner in which the subject cans were displayed on the date of the plaintiff's accident three years earlier, and nothing in the plaintiff's declaration—or other evidence submitted by her in opposition to the motion—fills this gap."

The court further ruled: "To avoid summary judgment, plaintiff was required to adduce evidence to raise a triable issue of fact that the defendant had notice of a dangerous condition in time to remedy the condition. [Citation.] Plaintiff presents no direct evidence of the duration of the condition at issue. Moreover, nothing is offered to raise a triable issue of fact that Grocery Outlet's inspection procedures were insufficient to discover and correct hazardous conditions, or that it did not follow these procedures on the day of the plaintiff's accident. [Citation.] [¶] Grocery Outlet satisfied its summary judgment burden to show that it did not breach a duty of care to the plaintiff and plaintiff has failed to raise a triable issue of material fact on this issue in opposition to the motion."

4

## DISCUSSION

### A. Legal Standards

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).[1]) "A defendant . . . has met [this] burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (§ 437c, subd. (p)(2).) A moving defendant is not required "to conclusively negate an element of plaintiff's cause of action," i.e., prove the negative, in order to shift the burden. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 853.) The defendant need only show that the plaintiff "does not possess" and "*cannot reasonably obtain*" needed evidence, "that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X." (*Id*. at pp. 853, 854.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]" (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]" (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

"It is well established in California that . . . a store owner is not an insurer of the safety of its patrons." (*Ortega v. Kmart Corp*. (2001) 26 Cal.4th 1200, 1205.) The store owner does owe a duty of care to not create a dangerous condition or allow it to persist after notice, and "exercises ordinary care by making reasonable inspections of the portions of the premises open to customers." (*Ibid*.) Thus, an injured plaintiff has the

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

burden of showing that the owner had notice of the defect within sufficient time to correct it, but failed to take reasonable steps to do so.  (*Moore v. Wal-Mart Stores, Inc.* (2003) 111 Cal.App.4th 472, 476 [judgment for plaintiff reversed when jury not instructed that store owner had to have knowledge of dangerous condition to be liable].)  "[I]t would not be prudent to hold otherwise.  Without this knowledge requirement, certain store owners would essentially incur strict liability for slip-and-fall injuries, i.e., they would be insurers of the safety of their patrons."  (*Id.* at p. 479.)

### B. Wells's Contentions

### 1. Expert Testimony

Wells contends the trial court erred by failing to "give proper weight to the expert, Al Ferrari, PE, when he testified that the shelving and configuration of cans did not meet safety standards."  We reject the contention.

"Under California law, trial courts have a substantial 'gatekeeping' responsibility" because of the need to exclude unreliable evidence.  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 769 (*Sargon*).)  The court must therefore give "critical consideration [to the expert's] reasoning."  (*Pacific Gas & Electric Co. v. Zuckerman* (1987) 189 Cal.App.3d 1113, 1136 [excluding poorly reasoned expert valuation].)  "[A] court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning." (*Sargon*, *supra*, 55 Cal.4th at p. 771.)  "[T]he matter relied on must provide a reasonable basis for the particular opinion offered, and . . . an expert opinion based on speculation or conjecture is inadmissible."  (*Id.* at p. 770.)  An expert may testify about an experiment only upon a showing of foundational facts including "that it was conducted under conditions the same as or substantially similar to those of the actual occurrence."  (*People v. Boyd* (1990) 222 Cal.App.3d 541, 565–566 [improper to admit demonstration not similar to actual occurrence], citing e.g*., Culpepper v. Volkswagen of America, Inc.* (1973) 33 Cal.App.3d 510, 521 ["must have been conducted under substantially similar conditions as those of the actual occurrence," though not necessarily "absolutely identical"].)

Wells asserts, "The cardboard shelves and unidentified employees support a finding that a dangerous condition of property might have been present at the time of the accident." However, there was nothing in the record suggesting that the displays Ferrari observed—presumably years after the accident—were the same as those Wells encountered the day she was injured. Ferrari provided his opinion regarding a "typical configuration of stacked canned goods," but neither he nor Wells testified that this was the way the cans of ravioli were configured on the date of the incident. Ferrari also declared that shelving cans in boxes could result "in the risk that several cans above a lower partially empty layer may topple over and strike a shopper as they attempt to retrieve a can." There was no evidence that the cans that struck Wells were "above a lower partially empty layer." Thus, the trial court properly gave Ferrari's declaration little weight on the ground that there was "nothing to support that the circumstances described in Mr. Ferrari's declaration existed or occurred on the date of the plaintiff's accident, and with respect to the display at issue."

### 2. Grocery Outlet's Employee Declarations

Wells contends the trial court erred by "conclud[ing] that the declarations of . . . Tiapon . . . and . . . Grossman . . . negated plaintiff's claims . . . ." She asserts that Tiapon's declaration should have been disregarded because he was not "there on the day of injury." Tiapon, however, merely provided information regarding the store's general practices, not about what he observed on the date of Wells's injury. Grossman confirmed that the practice Tiapon described was the one that was in place at the time the injury occurred. Wells asserts that Grossman's declaration should have been disregarded because Grossman "is not an expert in safety." Grossman, however, was not offered as an expert; rather, he pointed out—based on his personal knowledge—that he was "aware of no prior instances of 'cans falling on customers' at this location" and "had no knowledge that the cans were stacked 'incorrectly' at the time of the incident as plaintiff alleges." Grossman's declaration was therefore relevant on the issue of notice—whether Grocery Outlet had notice of a dangerous condition in time to remedy the condition. (*Ortega v. Kmart Corp.*, *supra*, 26 Cal.4th at p. 1206.) In light of the fact that Wells

7

failed to present any evidence that Grocery Outlet's inspection procedures were insufficient to discover and correct hazardous conditions, or that it did not follow these procedures on the day of the accident, the trial court properly determined that Tiapon and Grossman's declarations "negated [Wells's] claims."

### 3. Objections

Wells contends the trial court erred in failing to rule on the parties' evidentiary objections. Grocery Outlet responds that the trial court was not required to rule on the objections because Wells failed to submit a proper proposed order along with her objections. (Citing Cal. Rules of Court, rule 3.1354(c).) We need not—and therefore will not—address whether the document Wells submitted was sufficient to satisfy the requirements set forth in the Rules of Court because we reject the contention on the ground that Wells has failed to show she was prejudiced in any way.

" No judgment . . . shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475.) Accordingly, we reverse a judgment only if we conclude "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–802.) Because prejudice is not presumed, "the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833; *Santina v. General Petroleum Corp.* (1940) 41 Cal.App.2d 74, 77 ["[w]here any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there"].) "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

Wells has presented no substantive legal argument or analysis on the issue of whether the purported error was prejudicial.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["[t]he absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)  In her opening brief, she merely asserts, "In view of the fact that the trial court ultimately determined that there was a failure of proof on the part of the appellant's case, the court's failure to rule [on the objections] constituted reversible error."  She does not point to any specific item of evidence on which the trial court relied that she believes should not have been considered.  She does not explain how the court's ruling on any of her objections would have prevented it from granting summary judgment in favor of Grocery Outlet.  In her reply brief, she asserts that the trial court's "failure to rule in a timely fashion precluded the Appellant from seeking the remedy that might have salvaged her case," but she does not state what that remedy would have been.  Wells has not met her burden of showing prejudicial error.

### 4. Statement of Undisputed Facts

Wells contends the trial court erred in stating she had failed to file a separate statement of undisputed facts when she, in fact, had prepared and filed one.  The record shows that the trial court stated, "Plaintiff's failure to file a separate statement in opposition to the motion provides an additional justification for granting the motion. [Citations.]"  The record shows that Wells filed a document entitled "PLAINTIFF, DONNA WELLS', RESPONSE TO DEFENDANT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION."  We need not—and therefore will not—determine whether this document satisfied California Rules of Court, rule 437c(b)(3), which requires the filing of a separate statement, because the trial court merely noted, *as an alternative ground for granting summary judgment*–that Wells had not filed a separate statement.  The trial court essentially excused any inadequacies in Wells's separate statement by addressing the

motion for summary judgment on its merits and finding in Grocery Outlet's favor based on *all* of the evidence.[2]

### 5. Res Ipsa Loquitur

Wells contends the trial court erred by failing to rule on the issue of res ipsa loquitur. Her argument is not entirely clear. It appears she is asserting that the trial court should have sua sponte ruled that the doctrine of res ipsa loquitur applied. She asserts, "Summary judgment proceedings are limited to the claims framed by the pleadings. However, some cases have expressed the view that trial courts are empowered to read the pleadings broadly, in the light of the facts adduced in the summary judgment proceeding." Noting that "[t]he test is whether such a particular theory or defense is one that the opposing party could have reasonably anticipated would be pursued, and whether a request for leave to amend accordingly would likely have been granted," she argues, "That was the case here where the cardboard shelf was defective and the court should have recognized that." She cites no relevant authority to support her purported position that the doctrine applied to her case, and we have found no such authority.

### 6. Denial of Stay

Wells contends the trial court erred in denying her request of a stay of the proceedings while she was incarcerated in prison. We reject the contention.

On July 10, 2012, Wells filed a motion to stay the proceedings "pending [her] transfer from Carswell Medical Center in Fort Worth[,] Texas" to "Dublin." The court denied the motion, stating Wells "did not support her motion with any evidence. There are no statements from plaintiff herself, prison officials, or anyone else, regarding the location and duration of her confinement or the expected date of her transfer to a different facility. There is no explanation from plaintiff or her attorney as to what tasks can only be performed once plaintiff has transferred to a different prison facility than the one she resides in now. There is no description of the efforts, if any, that have been made to

---

[2]Wells does not argue—and has not shown—that the trial court failed to consider any of the evidence she presented and the arguments she made in opposition to the motion.

accomplish those tasks to point." The court also noted that Wells has the ability to gather evidence through her attorney, and that her testimony can be secured by deposition.

The trial court did not abuse its discretion in denying the motion for a stay of the proceedings. (See *Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 889 [trial court's ruling as to whether there was good cause to grant a motion for a stay is reviewed under the abuse of discretion standard].) "Where . . . an incarcerated party to a civil action is represented by counsel, he does not have an absolute right to attend the proceedings." (*Arnett v. Office of Admin. Hearings* (1996) 49 Cal.App.4th 332, 339.) Here, Wells was represented by counsel. Moreover, as the trial court pointed out, she presented no evidence in support of her motion, not even of her expected transfer date. She did not explain why she needed to be present in order to oppose the motion for summary judgment, or how she would be prejudiced if the stay were denied.

On appeal, she asserts she was prejudiced "because she was unable to be examined by an expert witness that could have explained how the cans that fell on her caused the injury and that the impact showed the negligent stacking which supported an instruction on the doctrine of res ipsa loquitur." She did not raise this argument below. In any event, she fails to explain how the trial court's denial of her motion for a stay of the proceedings prevented her from discussing the matter with her expert. There was no abuse of discretion.

11

## DISPOSITION

The judgment is affirmed.  Respondent Grocery Outlet, Inc., shall recover its costs on appeal.

_____

McGuiness, P.J.

We concur:

_____

Pollak, J.

_____

Jenkins, J.